432 So.2d 246 (1983)
Arnold Leland STEWART
v.
John Hans GOEB, et ux.
No. 82-C-1906.
Supreme Court of Louisiana.
May 23, 1983.
A. Wayne Buras, Covington, for applicant.
Jay McCreary, Slidell, for respondent.
BLANCHE, Justice.
We are asked to determine whether the trial court erred in sustaining an exception of prescription urged in opposition to a natural father's action to annul an adoption decree which terminated his parental rights.
Arnold Leland Stewart and Susan Stewart were married on June 4, 1966 and established their matrimonial domicile in Colusa, Illinois. Four children were born of the marriage, the oldest of which is now sixteen. *247 On August 29, 1973, Arnold was granted by an Illinois court a judgment of final divorce from Susan. The judgment granted custody of the four children to Susan, subject to the visitation rights of Arnold. To ensure compliance with the custody decree, Susan was required to post a bond in the amount of $1,000 which would be forfeited should she fail to comply with the terms of visitation.
For the next several years, Susan habitually failed to allow Arnold to visit with the children and often concealed from him their whereabouts. Arnold last visited with the children in the summer of 1975, and the trial court decreed forfeiture of Susan's bond on November 2, 1977. In 1980, Arnold learned that Susan and the children were residing in Savannah, Georgia. Sometime prior to 1980, Susan had been married to John Hans Goeb.
Arnold filed suit in a Georgia court, requesting custody of the children and recognition of the Illinois divorce and custody decree. Susan answered on May 15, 1980, alleging that a final decree of adoption had been rendered in St. Tammany Parish, Louisiana on December 11, 1978, terminating all of Arnold's parental rights and declaring the four children to be the children of John Hans Goeb and Susan Stewart Goeb. It was at this time that Arnold first learned of the adoption. He was never previously made aware of the pendency of such proceedings in Louisiana nor was he ever notified of the final adoption decree.
On January 27, 1981, eight months after learning of the adoption, Arnold filed suit in St. Tammany Parish to have declared null the adoption decree. His petition asserted that Susan was at all times in possession of his current mailing address and was fully aware of his whereabouts when the adoption proceeding was instituted. He also alleged that except for a four month period of which Susan had knowledge, his mailing address has always been P.O. Box 1, Colusa, Illinois 62329, which was the address of the matrimonial domicile he established with Susan in 1966. In their petition for adoption, John and Susan Goeb had alleged that they had no knowledge of Arnold's whereabouts.
In response to Arnold's petition for nullity, John and Susan filed an exception of prescription on the basis of LSA-R.S. 9:440, which provides:
"No action to annul a final decree of adoption rendered prior to July 31, 1974, for any reason, may be brought. No action to annul a final decree of adoption rendered prior to September 7, 1979, for any reason, shall be brought after a lapse of six months from September 7, 1979."
The exception was sustained by the trial court. On appeal of that ruling, Arnold asserted that application of R.S. 9:440 to bar his action to annul a fraudulently obtained adoption decree violated his constitutional right to due process of law. See U.S. Const., amendment XIV; La. Const. art. I, § 2. The court of appeal affirmed, 417 So.2d 59 (La.App.1982), ruling that R.S. 9:440 was clear and unequivocal and that Arnold's right to annul the adoption, regardless of the ground upon which it was urged, had been extinguished. We granted writs to examine the propriety of these rulings.
Arnold based his action in nullity on La. C.C.P. art. 2004, which provides:
"A final judgment obtained by fraud or ill practices may be annulled.
An action to annul a judgment on these grounds must be brought within one year of the discovery by the plaintiff in the nullity action of the fraud or ill practices."
In essence, the principal issue for our determination is whether the six-month peremptive period of LSA-R.S. 9:440 overrides the one year period afforded by La.C.C.P. art. 2004, even where it appears as though the adoption decree may have been obtained by "fraud or ill practice." In our view, it does not, and Arnold had one year from the date of discovery of the fraud to bring his nullity action. Accordingly, we reverse.
In our opinion, R.S. 9:440 and art. 2004 may be read together. The purpose of the art. 2004 nullity action is to provide, independent of all other actions for judicial *248 relief, a mode of redress for injustices in the rendering of judgments. See Johnson v. Jones-Journet, 320 So.2d 533 (La.1975); Schoen v. Burns, 321 So.2d 908 (La.App. 1st Cir.1975); Comment, The Action of Nullity under Louisiana Code of Civil Procedure Article 2004, 38 La.L.Rev. 806 (1978).[1] The action must be brought within one year of the discovery of the fraud or ill-practice.
On the other hand, R.S. 9:440 purports to allow actions to annul adoptions if they were brought within six months of September 7, 1979, yet perempts any right to bring any action after that date, irrespective of the ground upon which it is urged. Until the provision was enacted in its present form by Acts 1960, No. 268, § 5, its predecessors only perempted actions to annul adoptions which were defective in form.[2]
The purpose of the peremptive period of R.S. 9:440 is to afford finality of judgment in the interests of the parties involved in the adoption. On the other hand, the underpinnings of the art. 2004 nullity action reflect a legislative desire that no party be allowed to subvert the judicial process to obtain, at the expense of an unwitting opponent, a judgment which is unconscionable in result.[3] The one year prescriptive period of art. 2004, like the six month peremptive period of R.S. 9:440, is designed to promote finality of judgment. Therefore, both provisions operate to achieve the same goal; yet, in our view, R.S. 9:440 was not intended to protect adoption decrees which may have been obtained fraudulently. Such an intention would be inconsistent with the legislative history of the provision. See n. 2, supra. The six month peremptive period should not be interpreted to override art. 2004 so to bar an action to annul an adoption decree which may have been obtained through fraud or ill-practice as long as the action is brought within one year of the date of discovery of the fraud. In all other cases, R.S. 9:440 should bar the action as perempted. See, e.g., Succession of Pizzillo, 223 La. 328, 65 So.2d 783 (1953).

DECREE
For the foregoing reasons, the judgments of the trial court and the court of appeal sustaining the exception of prescription are vacated, and the exception is hereby overruled. Since the case was only before this court on an exception of prescription which was sustained prior to trial on the merits, the case is hereby remanded to the trial court to allow the defendants to file an answer and for further proceedings on the merits of the action.
REMANDED.
DENNIS, J., concurs and assigns reasons.
LEMMON, J., concurs and will assign reasons.
DENNIS, Justice, concurring.
I respectfully concur.
*249 I agree with the majority's result but not its statutory construction. La.R.S. 9:440 provides:
No action to annul a final decree of adoption rendered prior to July 31, 1974, for any reason may be brought. No action to annul a final decree prior to September 7, 1979, for any reason, shall be brought after a lapse of six months from September 7, 1979. (Emphasis added)
Unless the legislature was speaking in code and wished a secret meaning attached to its words, it is obvious that it intended to bar any action to annul a final decree of adoption brought for any reason after the prescribed dates.
Nevertheless, I think the majority has reached the correct result in this case because the statute cannot be applied constitutionally to bar an action under these circumstances. Parents have a fundamental liberty interest in the care, custody and management of their children, which is protected by the Fourteenth Amendment. Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); Lassiter v. Dept. of Social Services, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). When the state moves to destroy familial bonds, it must provide the parents with fundamentally fair procedures. Id.
Our adoption statutes operate under a procedure that requires that a parent be served with ordinary civil process prior to the commencement of the adoption proceeding. La.R.S. 9:425. However, in an ordinary civil suit, a party who is not legally served with process because of the fraudulent conduct of his adversary has a remedy in a separate action to annul the judgment. See C.C.P. arts. 2002, 2004. In the case of an adoption decree, however, La.R.S. 9:440 attempts to deny any relief to a parent who loses his rights to his children without notice of the adoption hearing. Thus, instead of enjoying special procedural protection to safeguard his prized parental rights, a parent would have even less procedural protection than an ordinary civil litigant has.
Whether a particular statute satisfies due process under the Fourteenth Amendment requires a balancing of competing interests affected by the statutory rule. In Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Supreme Court announced three elements to be evaluated when a procedural statute is scrutinized under the due process clause: the private interests at stake, the government's interest in the rule, and the risk that the rule will lead to erroneous decisions. The parent who loses all rights to his children has a great interest in having a right to challenge an adoption decree from which he was fraudulently excluded. His interest in the care, custody and management of his own child is commanding. Santosky v. Kramer, supra; Lassiter v. Dept. of Social Services, supra; Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). Since La.R.S. 9:440 operates to irrevocably sever the parent's bond to his child, his interest assumes added importance because of the finality of the decree as well as its severity. To be sure, each child has an interest in a stable and healthy environment, but for most children the preservation of natural familial bonds promotes physical, mental and psychic well-being. In addition, an attack on an adoption decree may ultimately benefit the child's well-being if the presence of both parents makes for a more informed decision by the court. Likewise, the state's interest in the welfare of its citizens is promoted by a full discussion of the proposed adoption, even if it entails a re-opening of the question. Finally, the operation of La.R.S. 9:440 is far more dangerous than procedures that merely lead to erroneous decisions; it shields all adoption decrees from further consideration. An erroneous decision to separate a parent from his child is forever unassailable under this statute.
Within this context, the state's interest in finalizing all prior adoptions must be balanced against plaintiff's interest in a right to participate in the termination of his parental rights. These considerations weigh heavily in favor of the protection of a parent's right to participate in an adoption hearing. Although this statute may permissibly bar attacks based on other irregularities *250 in an adoption decree, a parent's right to notice of the hearing is too fundamental to be denied by the state's interest in finality. Therefore, I conclude that the application of La.R.S. 9:440 to bar the parent's action to annul an adoption of which he was fraudulently deprived of notice would deny him of constitutional due process of law.
The plaintiff in this case was entitled to a reasonable time after receiving notice in which to attack the adoption decree. He filed his nullity petition eight months after receiving notice of the adoption. In my opinion, plaintiff acted within a reasonable time and his petition was therefore filed timely. Accordingly, for the reasons assigned, I concur in the majority's decision that plaintiff is not barred from asserting his action to annul the adoption decree.
NOTES
[1] Each case must be considered from an equitable viewpoint to ascertain whether it would be inequitable or unconscionable to allow the judgment to stand. A two-step analysis is required: (1) the party seeking the annulment must have been deprived of some legal right, and (2) the resulting judgment must be unconscionable. Comment, supra, at 813-816.
[2] Acts 1932, No. 46, § 13 provided that no action to annul an adoption made prior to the act could be brought more than six months from its effective date, if the purpose of the action was "solely" for the purpose of "annuling acts of adoption by reason of such adoption not having been effected by an authentic act," by a private act before witnesses and duly acknowledged, or that "all necessary parties did not sign the act of adoption."

Acts 1948, No. 228, § 20 provided: "No action to annul an adoption rendered prior [to the effective date of this act shall be brought within six months of that date], where the reason for annulment is lack of [personal jurisdiction], a defect in the procedure followed, or the alleged invalidity of the statute under which the decree was entered."
Acts 1960, No. 250, § 2, the immediate predecessor of R.S. 9:440 in its present form, read substantially the same as Act 228 of 1948.
[3] It is well-settled that familial and parental rights are among the most fundamental of our constitutionally-protected rights. cf. Moore v. City of East Cleveland, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977); La.Civ.Code art. 216; Wood v. Beard, 290 So.2d 675 (La.1974).