In re the MARRIAGE OF Connie R. KINNARD and James A. Kinnard.

Upon the Petition of Connie R. Kinnard, Appellant,

And Concerning James A. Kinnard, Appellee.

No. 93–0218.

Court of Appeals of Iowa.

Dec. 29, 1993.

David S. Wiggins of Wiggins & Anderson, P.C., West Des Moines, for appellant.

Paul E. Huscher of the Law Offices of Paul R. Huscher, Des Moines, for appellee.

Heard by OXBERGER, C.J., HAYDEN, J., and KEEFE, S.J.*

HAYDEN, Judge.

James and Connie Kinnard were married in 1971. The parties had three children: Michella, born in 1972; Jason, born in 1975; and Jeremy, born in 1978. Connie had completed two years of undergraduate work before the marriage but quit school to put James through Palmer Chiropractic School. Connie also used an inheritance of $12,595 to help with James's school expenses. Upon James's graduation, Connie worked at home caring for the children.

James began his chiropractic practice in Corydon, Iowa. Later he opened another practice in Chariton. Both parties worked hard in the business. Connie worked for the practice as bookkeeper, accountant, receptionist, and personnel manager. Just prior to the parties' divorce, James's practice earned a gross income of over $200,000. James and Connie accumulated significant assets during the marriage.

On Wednesday, November 23, 1988, the district court dissolved the marriage of James and Connie. In its decree the trial court awarded property and assets worth $113,135.86 to Connie and property and assets valued at $248,327 to James. To compensate for the disparity in this property distribution, the trial court awarded Connie a note payable by James in the amount of $67,595.82. Connie was awarded $1500 per month in child support for the two children residing with her, Michella and Jeremy, and $1000 per month alimony for a period of five years. James was awarded custody of Jason and $100 per month in child support.

Between Wednesday, November 23, and Sunday, November 27, 1988, James proposed he and Connie remarry. Connie and James were remarried in Milan, Missouri, on November 27, 1988.

In March 1989 Connie learned James continued to have a relationship with his girlfriend and refiled her petition for dissolution of marriage. Connie dismissed this case in May 1989. The parties reunited until December 1989, when Connie filed her third petition. On October 17, 1990, the district court entered a decree awarding Connie property worth less than one-third of the property she received under the 1988 dissolution decree. This award represented her share of the existing marital property. Connie was also awarded $160 per month in child support for the remaining minor child at home. The court made no alimony award.

On July 31, 1991, Connie filed an application to modify the decree, a petition to vacate the 1990 dissolution decree pursuant to Iowa Rule of Civil Procedure 252, and a petition for declaratory judgment. Connie alleged James had induced her to remarry so he would not have to pay her the money provided in the 1988 dissolution decree. Connie additionally alleged James began to deplete the marital assets soon after their remarriage. The trial court denied Connie's application to modify, petition to vacate, and petition for declaratory judgment. The court stated Connie knew the 1988 decree had been filed before the remarriage. The court also held Connie had not offered substantial evidence proving James intentionally dissipated the marital assets. Connie has appealed.

---

* Senior judge from the 1st judicial district serving on this court by order of the Iowa Supreme Court.

Connie raises three issues on appeal. First she claims there was substantial evidence to show James's income increased dramatically after the 1990 divorce. Connie alleges James's net income for 1991 was $72,455, not including the sale of the Corydon practice. Connie claims James recently purchased a new home and an $11,000 automobile. Connie claims she has amassed over $36,000 in debt to maintain a modest lifestyle. Connie additionally contends Jeremy, their youngest child still at home, has developed severe emotional problems, the treatment of which has cost $5600. Connie requests James's child support obligation be increased substantially.

Next Connie argues the trial court should have vacated the 1990 dissolution decree and enforced the provisions of the 1988 dissolution decree, based on James's fraudulent actions. Finally Connie contends the district court should have granted her request for a declaratory judgment.

James cross-appeals, arguing the trial court erred in failing to impose sanctions against Connie. James maintains Connie has repeatedly charged him with baseless crimes which have received some publicity in his community.

■ I. *Motion to Vacate Judgment.* We focus on Connie's request to vacate the 1990 dissolution decree pursuant to Iowa Rule of Civil Procedure 252. Our review of a proceeding for the vacation of a judgment is on assigned errors; our review is not de novo. *In re Marriage of Heneman,* 396 N.W.2d 797, 799 (Iowa App.1986) (citation omitted); *In re Marriage of Bauder,* 316 N.W.2d 697, 700 (Iowa App.1981) (citation omitted). The trial court has considerable discretion in determining whether to afford relief when a vacation of judgment is sought. *Heneman,* 396 N.W.2d at 799. The appropriate standard regarding review of a motion to vacate judgment is the trial court's findings of fact have the effect of a jury verdict, and those findings are binding upon us if substantial evidence supports them. *Id.* at 799–800 (citation omitted). We are more inclined to find abuse of discretion when relief from the judgment has not been granted, as in this case, than when it has been

granted. *Hastings v. Espinosa,* 340 N.W.2d 603, 608 (Iowa App.1983) (citations omitted).

Iowa Rule of Civil Procedure 252 allows a court to modify or vacate a final judgment on the ground of irregularity or fraud practiced upon the court. Where fraud is asserted as the ground for vacating a judgment, it "must be extrinsic fraud or collateral to the matter directly involved in the original case." "Extrinsic fraud is some act or conduct of the prevailing party which has prevented a fair submission of the controversy. It included lulling a party into a false sense of security of preventing him from making a defense." *Bauder,* 316 N.W.2d at 699 (citations omitted). Extrinsic fraud pertains to the manner in which the judgment was procured. *Cook v. Cook,* 259 Iowa 825, 830, 146 N.W.2d 273, 277 (1966) (citation omitted). The "fraud" used in Iowa Rule of Civil Procedure 252(b) includes "any act, omission or concealment which involves a breach of legal or equitable duty, trust or confidence, and is injurious to another, and by which an undue or unconscientious advantage is taken of another." *Heneman,* 396 N.W.2d at 800 (citations omitted).

■ Connie contends James's proposal and actions during the second marriage constituted fraud. She argues he fraudulently induced her to remarry him in order that he could avoid his financial obligations and the consequences under the 1988 dissolution decree. The trial court found James had not acted fraudulently. The evidence, however, does not support this finding.

The district court admitted into evidence a letter written by James's girlfriend to James, which supports Connie's contention. The letter reads, in part "which only makes me wonder if you are doing this for the reasons you tell me, which are mostly for the money, or if you really do still love her." The trial court treated this letter as an admission by James.

James's actions immediately before and during the second marriage support a finding of fraud. The trial court entered a decree of dissolution on November 23, 1988. James testified he went to the courthouse on No-

vember 23, 1988, and obtained a copy of the dissolution decree. Copies of the decree were sent to the parties' attorneys on that date. The courthouse was closed Thursday, November 24, 1988, through Sunday, November 27, 1988, for the Thanksgiving holiday. It was during this time James proposed remarriage to Connie. He did not reveal the provisions of the decree to Connie. Connie testified she knew a decree had been entered but had no idea of the property and support awards prior to her remarriage to James on Sunday, November 27, 1988. Connie stated she was afraid she could not support her children and James had agreed to quit seeing his girlfriend and attend marriage counseling if she agreed to remarry him. Based on this fear and James's promises, Connie agreed to remarry James. Evidence indicates James failed to keep his promises.

■ The trial court found James did not intentionally dissipate the parties' assets after their remarriage. We disagree. Substantial evidence does not support the trial court's finding. The evidence shows James quickly dissipated the assets after the parties' remarriage on November 27, 1988. On December 8, 1988, James made a payment of $12,000 to his parents. He stated the money was a repayment for his prior education. James cashed in Keough Plan funds in the amount of $15,512 to obtain this payment. In late 1988 or early 1989 James sold his practice in Chariton for $60,000. He stated he could not remember if he told Connie about this sale. James testified he spent the money on flying clubs, trips, attorney fees, and taxes. He admitted the $60,000 was gone in a short period of time. James also sold an airplane on January 3, 1989, and received $20,000 for the sale. He also sold two guns in the summer of 1989 for $330.

In December 1989 Connie filed for divorce. James admitted *he began* negotiations with Doctor Heffron for the sale of his practice in Corydon in early 1990, prior to the dissolution trial. He stated "*I offered* to sell him anything for $100,000, the house, the practice, anything there was." James testified Doctor Heffron refused to buy the practice until the divorce was done. Shortly after the divorce James sold the practice, minus all

equipment except a computer, to Doctor Heffron for $75,000. The record shows James valued the practice, including the equipment, at less than $24,000 during the 1990 dissolution trial.

The trial court erred in finding Connie had failed to prove fraud and had failed to show James's intentionally dissipated assets following the parties' remarriage. Substantial evidence does not support these findings. We conclude the 1990 dissolution decree must be set aside on the ground James acted fraudulently. We reverse the district court on this issue. The 1990 dissolution decree is vacated, and the 1988 dissolution decree is reinstated. Due to our holding on this issue, we do not address Connie's other claims.

■ II. *Sanctions.* On cross-appeal, James requests the court impose sanctions against Connie pursuant to Iowa Rule of Civil Procedure 80(a). James contends her legal actions against him are without merit. Our standard of review of a sanction order is an abuse of discretion. *Mathias v. Glandon*, 448 N.W.2d 443, 445 (Iowa 1989). We will not disturb the trial court's decision unless it is clearly erroneous. *Id.* (citation omitted). We find no merit in James's contentions. The trial court did not abuse its discretion in refusing to impose sanctions against Connie. We affirm on this issue.

Costs of this appeal are taxed to James Kinnard.

**REVERSED IN PART; AFFIRMED IN PART.**

SACKETT, J., takes no part.