In re the ADOPTION OF B.J.H., B.J.G., and B.J.R.

B.M.S., Mother, Appellant.

No. 96–1497.

Supreme Court of Iowa.

May 21, 1997.

Douglas H. Napier of Napier, Wright & Wolf, Fort Madison, for appellant.

Thomas J. Skewes of Johnson & Skewes, Fort Madison, for appellee-adoptive father.

Considered by McGIVERIN, C.J., and LARSON, CARTER, SNELL, and TERNUS, JJ.

TERNUS, Justice.

The appellant, B.M.S., whom we shall call "Beth," is the biological mother of B.J.H., B.J.G., and B.J.R. The district court found Beth had fraudulently induced her former husband to adopt her children and on that basis, the court vacated the adoption decree. The mother appeals, claiming the district court erred in finding fraud and in failing to consider the best interests of the children. We affirm.

### I. *Background Facts.*

The following facts were found by the trial court. Beth and the adoptive father, whom we shall call "Brent," were married in 1991. At the time of their marriage, Beth had three children, one from each of three prior marriages. She was receiving government benefits for dependent children and food stamps.

The marriage between Beth and Brent was marred by discord, which Beth attributed in part to Brent's failure to adopt her children. As early as December of 1991, they contacted an attorney for purposes of pursuing an adoption but the biological fathers of two of the children would not consent. Another attempt in 1994 also failed to secure the agreement of the two nonconsenting fathers. In 1995, Beth and Brent retained attorney Douglas Napier who was successful in obtaining agreements from all three fathers voluntarily relinquishing their parental rights. Although the necessary consents were obtained in April, Brent did not proceed with the adoption because he had doubts about the stability of his marriage to Beth.

In August 1995, Beth and Brent "had a big fight" during which Beth accused Brent of not caring for her children. Beth told Brent his failure to adopt the children was the biggest problem in their marriage and, if he would go through with the adoption, their marriage would work. This was Brent's first marriage and he wanted to preserve it, so he told Napier to prepare the necessary papers for the adoption. Brent was fully aware of the obligation of support he would assume if he adopted the children.

On September 7, 1995, Beth and Brent signed the adoption papers at Napier's office. The next morning Napier filed a "petition for termination of parental rights and adoption (by stepparent)" and presented the petition to a district court judge. The judge signed a decree terminating the parental rights of the children's biological fathers and approving the adoption that same day. The order was not filed, however, due to the court's belief the oldest child, who was then fifteen, was entitled to a twenty-day notice of the proposed adoption.[1] Although the order was not filed on September 8, 1995, Beth phoned Brent at work that day and told him the adoption was final.

Within a week, the marriage resumed its deterioration. Brent began to suspect Beth was having an affair because she was "very attentive" to a neighbor, whom we shall call "Gordon." During an argument between the parties on September 23, 1995, Beth informed Brent she wanted a divorce. She also admitted she was having an affair with Gordon and said she and Gordon were meant

---

1. Iowa Code § 600.11(2) (1995) requires certain parties be given twenty days notice of the adoption hearing. One of the categories of persons entitled to this notice is any person "required to consent under section 600.7." Iowa Code § 600.11(2)(d). Section 600.7(1)(d) requires any person to be adopted over the age of fourteen years to consent to the adoption. Consequently, the fifteen-year-old child Brent proposed to adopt was entitled to twenty days notice of the adoption hearing.

to be together. Nevertheless, she asked Brent to live in their basement and help out with the bills. Brent moved out.

Brent was unaware when he separated from Beth that the adoption decree had not been filed; he thought the adoption was final. In fact he and Beth discussed the status of the adoption when they separated. Beth asked Brent if he intended to halt the adoption. Brent responded that the adoption was done and there was nothing he could do about it. Although Beth knew the adoption was not done, she said nothing, allowing Brent to believe he could not abandon the adoption. If Brent had known the adoption was not final, he would have stopped the adoption proceedings. Instead, the termination and adoption decree was filed and became final nine days later, on October 2, 1995.

Beth knew Brent would not go through with the adoption if he learned she was having an affair. She told a co-worker she did not think the marriage would work when Brent signed the adoption papers because she was dating Gordon then.

Brent is currently employed, earning approximately $38,000 annually. Beth operates an unprofitable small business. Brent has been ordered to pay temporary child support of almost $900 per month during the pendency of the parties' dissolution proceeding. Brent has had no visitation with the children since the parties separated.

## II. *Procedural History.*

As noted above, the termination and adoption decree was filed on October 2, 1995. Within one year of this date, on April 3, 1996, Brent filed a petition to vacate the decree.[2] This petition was filed pursuant to Iowa Rule of Civil Procedure 252(b), which permits the court to vacate a final order upon proof of "fraud practiced in obtaining the [order]." Iowa R. Civ. P. 252(b). Brent's petition was tried to the district court as an ordinary action. *See* Iowa R. Civ. P. 253(c) (requiring the court to promptly assign the petition for trial in the same form and manner as an ordinary action). The district court subsequently entered an order finding fraud and vacating the earlier termination and adoption decree.[3]

Rule 253(c) gives a party "the same right of appeal" of the trial court's ruling on a rule 252 petition as in an ordinary action. Iowa R. Civ. P. 253(c). Beth exercised this right by bringing the present appeal. She argues the court's decision to vacate the adoption decree should be reversed. First, she contends the court's finding of fraud is not supported by substantial evidence. Beth's second argument on appeal is the trial court failed to consider the best interests of the children when vacating the adoption decree.

## III. *Standard of Review.*

■ The parties disagree on the appropriate standard of review. Beth claims our review is de novo because the case involves an adoption. *See* Iowa Code § 600.14 (1995) ("The supreme court shall review an adoption appeal de novo."). Brent argues the standard of review is at law because the order appealed is a judgment rendered on a rule 252(b) petition. *See Svoboda v. Svoboda,* 245 Iowa 111, 122, 60 N.W.2d 859, 865 (1953) (holding ruling on defendant's motion to set aside judgment is reviewable at law).

To resolve this issue, it is important to identify the precise matter before us on appeal. As our recitation of the procedural history of this case shows, the parties did not appeal the original adoption decree; therefore, the merits of the initial decision to allow

---

**2.** The biological fathers of the three children were personally served with the petition to vacate and with notice of the hearing on the petition. None of the fathers filed an answer to the petition. One father attended the hearing, but offered no evidence.

**3.** The trial court also concluded the adoption did not comply with the requirements of Iowa Code § 600.12(2) because Brent and the children did not attend the hearing on the adoption petition. *See* Iowa Code § 600.12(2) ("The adoption petitioner and the person to be adopted shall be present at the hearing, unless the presence of either is excused by the court."). Because we affirm on the primary ground upon which the trial court relied—Beth's fraud in inducing Brent to proceed with the adoption—we find it unnecessary to consider the effect of the parties' failure to comply with chapter 600.

the adoption is not before us. Consequently, section 600.14, requiring a de novo review in "an adoption appeal," does not apply.

The present appeal is from the court's ruling on Brent's petition to vacate the adoption decree based on fraud. Therefore, our standard of review is that applicable to appeals of orders issued on rule 252 petitions to vacate, even though the judgment vacated was rendered in an equity case. *Svoboda,* 245 Iowa at 122, 60 N.W.2d at 865 (holding ruling on defendant's motion to set aside default divorce decree is reviewable at law); *In re Marriage of Kinnard,* 512 N.W.2d 821, 823 (Iowa App.1993) (stating review of proceeding for vacation of judgment in dissolution proceeding is at law); *accord Adoption of Jason Christopher M.R.,* 88 Cal.App.3d 11, 151 Cal.Rptr. 501, 503 (1979) (holding review of proceeding to vacate adoption decree is at law).

██ The district court enjoys wide discretion in deciding whether to vacate an order under rule 252. *Kreft v. Fisher Aviation, Inc.,* 264 N.W.2d 297, 303 (Iowa 1978); *Cook v. Cook,* 259 Iowa 825, 829, 146 N.W.2d 273, 275 (1966). We will not reverse the trial court's decision on this question unless an abuse of discretion has been shown. *Windus v. Great Plains Gas,* 255 Iowa 587, 594, 122 N.W.2d 901, 905 (1963). We are more reluctant to find an abuse of discretion where the judgment has been vacated than when relief has been denied. *Kreft,* 264 N.W.2d at 303; *Windus,* 255 Iowa at 594, 122 N.W.2d at 905.

██ The court's exercise of discretion must have some support in the record. *Cook,* 259 Iowa at 829, 146 N.W.2d at 275; *Windus,* 255 Iowa at 594, 122 N.W.2d at 905. In examining the record, we give the trial court's findings the force of a jury verdict. *Mishler v. Stouwie,* 301 N.W.2d 744, 747 (Iowa 1981); *Windus,* 255 Iowa at 594, 122 N.W.2d at 905. Consequently, if the trial court's factual findings are supported by sub-

stantial evidence, they are binding on appeal. *In re Trust of Killian,* 494 N.W.2d 672, 675 (Iowa 1993); *Mishler,* 301 N.W.2d at 747.

## IV. Fraud Under Rule 252(b).

*A. Applicable law.* Courts faced with a request to vacate or annul an adoption have recognized an order of adoption is a judgment and may be set aside using the same procedure available for any other judgment. *E.g., In re Adoption of T.B.,* 622 N.E.2d 921, 924 (Ind.1993) (holding adoption decree may be set aside pursuant to general rule allowing order based on fraud to be set aside); *Stewart v. Goeb,* 432 So.2d 246, 247 (La.1983) (holding civil procedure rule allowing annulment of judgments obtained by fraud applies to action to annul an adoption decree); *In re McDuffee,* 352 S.W.2d 23, 26 (Mo.1961) (en banc) (holding decree of adoption may be vacated "upon any of the classical grounds that entitle . . . courts to vacate any other decree").[4] Thus, we begin our analysis with rule 252(b) and the cases developed under it regarding vacation of judgments procured through fraud.

██ Rule 252(b) permits the court to vacate a judgment if "fraud was practiced in obtaining" it. Fraud is of two types: extrinsic and intrinsic. Extrinsic fraud "is some act or conduct of the prevailing party which has prevented a fair submission of the controversy." *Stearns v. Stearns,* 187 N.W.2d 733, 735 (Iowa 1971); *accord Cook,* 259 Iowa at 830, 146 N.W.2d at 276. It "includes lulling a party into a false sense of security or preventing the party from making a defense." *Costello v. McFadden,* 553 N.W.2d 607, 612 (Iowa 1996); *accord In re Marriage of Short,* 263 N.W.2d 720, 723 (Iowa 1978). In contrast, intrinsic fraud inheres in the judgment itself; it includes, for example, false testimony and fraudulent exhibits. *Cook,* 259 Iowa at 830, 146 N.W.2d at 276.

---

**4.** Some courts have refused to apply general rules governing judgments where the adoption statute addresses the circumstances under which an adoption may be annulled. *E.g., In re Rabatin,* 83 Ohio App.3d 836, 615 N.E.2d 1099, 1101 (1992) (refusing to apply rule of civil procedure for vacating judgment because adoption statute specifically provided adoptions could not be questioned after one year upon any ground, in-

cluding fraud); *Hallford v. Smith,* 120 Or.App. 57, 852 P.2d 249, 253 (1993) (refusing to apply civil procedure rule for setting aside judgment obtained by fraud where adoption statute had a specific provision governing fraud in adoption proceeding). Iowa's adoption statute, chapter 600, contains no provision relating to vacation or annulment of an adoption decree.

Fraud sufficient to vacate a judgment under rule 252(b) must be extrinsic to the judgment. *Costello,* 553 N.W.2d at 612; *Sorenson v. Sorenson,* 254 Iowa 817, 825, 119 N.W.2d 129, 134 (1963).

Although proof of extrinsic fraud would ordinarily by itself be sufficient under rule 252(b) to support vacation of a judgment, an additional requirement must be imposed where an adoption decree is the judgment to be vacated. When the adoption of a child is involved, the court must consider the best interests of the child. *See Westendorf v. Westendorf,* 187 Iowa 659, 669, 174 N.W. 359, 362 (1919) (considering best interests of child in equity suit for cancellation of adoption decree on basis biological mother was induced to agree to adoption by fraud); *accord C.C.K. v. M.R.K.,* 579 So.2d 1368, 1371 (Ala. Civ.App.1991) (considering best interests of child in appeal of order annulling adoption); *Adoption of Jason Christopher M.R.,* 151 Cal.Rptr. at 504 (requiring trial court to consider best interests of child in ruling on adoptive parent's motion to set aside adoption); *Pierce v. Pierce,* 522 S.W.2d 435, 436 (Ky.1975) (noting general rule that child's best interest must be considered in deciding whether to vacate or annul an adoption decree); *In re Lisa Diane G.,* 537 A.2d 131, 133 (R.I.1988) (holding determination of claim of fraud in procurement of an adoption must involve a consideration of the child's best interests). As the trial court here correctly observed, public policy requires that we protect the best interests of the children and not annul their adoption for slight cause; on the other hand, judgments should not be sustained when they result from misleading and false circumstances, which would make enforcement unconscionable. With this balance of competing interests in mind, we turn to the facts of this case.

B. *Proof of fraud.* The fraud claimed by Brent in the present case rests on two representations made by Beth to him: (1) their marriage would work if Brent adopted Beth's children, a statement made when Beth was having an affair and believed Brent would not adopt the children if he knew that fact; and (2) the adoption decree was already final when the parties separated.

Brent claims, and the trial court found, he would not have filed the petition to adopt Beth's children if he had known Beth was having an affair. He also claims, and the trial court found, he would have abandoned the adoption when the parties separated if he had known the adoption decree was not yet final.

The trial court's finding of fraud is supported by substantial evidence. Brent testified to the statements and lack of disclosure by Beth. He also testified he believed Beth and relied on his understanding of the situation as represented by his wife in initiating the adoption and not stopping it later. Brent's testimony was supported by the testimony of Beth's co-worker, a woman the trial court found had "no reason or motivation to be untruthful." The co-worker testified to the following statements made by Beth. Brent had talked of adopting Beth's children, but had had second thoughts because he thought their marriage may not last. Beth thought Brent's delay was unfair to the children and she planned to tell Brent that if he would go ahead with the adoption, she would try to make the marriage work. Beth did not really want the marriage to work, did not plan to try to make it work, and did not think it would last. She said she was dating another man. The adoption was important to Beth because Brent had promised to adopt the children and "she wanted the child support."

This evidence supports the trial court's finding of fraud. The fraud perpetrated by Beth constitutes extrinsic fraud sufficient to justify vacation of the adoption decree, provided the best interests of the children do not dictate a contrary result. *See C.C.K.,* 579 So.2d at 1370–71 (finding adoptive father established fraud where evidence showed mother falsely represented adoption would restore marital harmony, father was deceived by representation, and father relied on representation in adopting wife's child).

C. *Best interests of the children.* Contrary to Beth's contention on appeal, we believe the trial court considered the best interests of the children in deciding to vacate the adoption decree. The court recognized

its order "affects the lives of three children." The court found, however, there was no relationship between Brent and the children. Substantial evidence supports this finding. On September 8, 1995, when Beth called Brent to tell him the adoption was final, he told her the family would have a party and celebrate when he came home from work. When he arrived, only Beth was home. Beth said the children had left to play, explaining "it had taken so long to make this happen that nobody cared about it anymore." Brent has not seen the children since he separated from their mother. Beth told him after the dissolution action was filed that she did not want him to see them. In effect, Brent has had no parental relationship with the children since he legally became their father on October 2, 1995. Beth offered no testimony to refute Brent's characterization of his relationship with the children or to deny her discouragement of any relationship. *See generally C.C.K.,* 579 So.2d at 1371 (finding to allow adoption to stand in view of estrangement between stepfather and mother "would place an impermissible emotional burden on the stepfather and ultimately on the minor child"); *Pierce,* 522 S.W.2d at 437 (holding if adoptive father's agreement to adoption was obtained by undue influence, annulment of the adoption judgment would be in the best interest of the child).

As for the children's economic interests, the trial court observed the vacation of the adoption decree would have the effect of also vacating the termination of parental rights of the children's biological fathers and of reinstating the fathers' legal responsibility for support of their children. Brent testified, however, Beth was not getting consistent support from the children's fathers prior to Brent and Beth's marriage. On the other hand, Beth testified that after she married Brent, she did not try to enforce the biological fathers' support obligations.

In summary, the evidence shows there is no psychological or emotional relationship between Brent and the children that would be preserved by continuing Brent's legal status as a parent. Arguably, however, child support might be more forthcoming from Brent than it has been from the children's biological fathers.[5] Notwithstanding this possibility, we think the trial court reasonably exercised its discretion in concluding the children's interest in economic support did not outweigh the fraud perpetrated on Brent by their mother. Courts of justice simply cannot approve fraud merely because children might financially benefit from it. To allow Beth and her children to profit economically from Beth's deceitful actions would only encourage such conduct by others and set a poor example of appropriate conduct for the children. In the absence of any emotional bond between Brent and the children, we will not reverse the trial court's exercise of discretion in vacating the adoption.

## V. Summary.

There was substantial evidence to support the trial court's finding of fraud under rule 252(b) and the court's finding there was no relationship between Brent and the children to preserve. Although the children may benefit financially if the adoption is allowed to stand, it would be ironic indeed if we affirmed the adoption solely because the mother's fraud achieved the desired purpose of obtaining a source of support. Given these facts, the trial court did not abuse its discretion in vacating the decree of termination and adoption.

**AFFIRMED.**

---

5. The record shows the biological father of Beth's oldest child (who is now seventeen) was in prison in September 1995. We cannot tell from the record before us whether that imprisonment will continue until the support obligations for this child would cease. Nevertheless, even if we assume no support will be available from the oldest child's father, we do not think the trial court abused its discretion in concluding this fact did not outweigh the fraud used to impose a support obligation for the child on Brent.