**IN THE COURT OF APPEALS OF IOWA**

No. 16-1308
Filed May 3, 2017

**IN RE THE ADOPTION OF J.B.H.,**
**Minor child,**

**P.B.,**
      Appellant.

_____

Appeal from the Iowa District Court for Woodbury County, Steven J. Andreasen, Judge.

A maternal grandmother appeals the denial of her petition to vacate an adoption decree. **AFFIRMED.**

Craig H. Lane of Craig H. Lane, P.C., Sioux City, for appellant.

Zachary S. Hindman and James N. Daane of Mayne, Arneson, Hindman, Hisey & Daane, Sioux City, for appellees.

Considered by Danilson, C.J., and Vogel and Vaitheswaran, JJ.

**VOGEL, Judge.**

A grandmother appeals the district court's ruling on her petition to vacate the adoption decree relating to her grandchild, J.B.H. The grandmother claims the court erred in finding she had failed to show grounds for vacating the decree. The adoptive parents assert the grandmother lacks standing to seek vacation of the decree. We agree with the adoptive parents and, therefore, affirm the district court's denial of the grandmother's petition to vacate.

## I. Background Facts and Proceedings

The grandmother is the maternal grandmother of J.B.H., born July 2011. In December 2011, the Iowa Department of Human Services (DHS) became involved with J.B.H. upon reports J.B.H.'s mother was failing to provide critical care to J.B.H. and a half-brother. The reports were not confirmed, but in January 2012, the mother agreed to voluntarily accept services through the DHS. Later in 2012, the mother began living in the grandmother's home with her two children.

In October 2012, the mother moved out of the grandmother's house, taking the children with her, and was temporarily homeless. Also in October 2012, the mother provided a drug screen, which was positive for methamphetamine and marijuana. The children were removed from the mother's care and later adjudicated children in need of assistance (CINA). At the time of removal, the mother requested the grandmother not be considered for placement. J.B.H. was initially placed at a children's shelter, then placed in family foster care; in January 2013, J.B.H. was moved to family foster care with

the eventual adoptive parents and has remained there throughout the pendency of the juvenile and district court proceedings.[1]

Following the CINA adjudication, the mother was resistant to services offered through the DHS. She failed to secure permanent housing, did not participate in mental-health or substance-abuse treatment, did not cooperate with drug screens, maintained a sometimes violent romantic relationship, and was inconsistent in cooperating with the DHS regarding visits with J.B.H. The grandmother intervened in the juvenile proceedings. On July 16, 2013, following an earlier hearing, the juvenile court ordered the mother's parental rights terminated. Custody and guardianship of J.B.H. was ordered to remain with the DHS and adoption was the ultimate goal for permanency. The order informed the parties that a notice of appeal by an aggrieved must be filed within fifteen days of the entry of the order. *See* Iowa R. App. P. 6.101(1)(a). Following a posttermination permanency review hearing, on August 30, the court issued an order noting the termination had not been appealed and J.B.H. was ready for adoption. The order also stated:

> The foster home wishes to adopt [J.B.H.] . . . A great aunt and uncle have been approved for a relative home study. The case manager will be meeting with the guardian ad !item/attorney for [J.B.H.], the previous case manager for the Iowa Department of Human Services and the adoption team for purposes of selecting an adoptive home for [J.B.H.] . . . The court specifically finds that reasonable efforts have continued to be made toward the permanency goal of adoption for J.B.H.

The juvenile court confirmed "that the custody and guardianship of [J.B.H.] remain with the Iowa Department of Human Services for purposes of adoption."

---

[1] J.B.H.'s half-sibling was placed with his biological father. Following termination of the mother's parental rights, the biological father was granted care of J.B.H.'s half sibling.

The grandmother was present and represented by counsel at both the termination and the posttermination hearing, and both the grandmother and the grandmother's sister asked to be considered as options for placement of J.B.H. The DHS performed home studies of both the grandmother's and the grandmother's sister's homes, as well as the foster parents' home.

On approximately October 28, 2013, the DHS informed the grandmother she had not been chosen to adopt J.B.H. In response, the grandmother filed a motion for custody and placement of J.B.H. in juvenile court.[2] On November 14, the adoptive parents, who had not intervened in the CINA or TPR proceedings, filed a petition for adoption in district court, seeking to adopt J.B.H. The DHS consented to the adoption, and on November 23, the district court granted the adoptive parents' petition to adopt J.B.H. The State filed a motion in juvenile court to dismiss the grandmother's motion for custody and placement because an adoption decree had been entered in district court, which the juvenile court granted. On February 14, 2014, the grandmother filed a petition to vacate the adoption, claiming irregularity or fraud in obtaining the adoption decree and the grandmother had been prevented from defending herself by unavoidable casualty or misfortune. On July 13, 2015, following trial, the district court entered

---

[2] At a December 2013 hearing, the adoption placement worker testified he notified either the grandmother or her attorney of DHS's decision to not consider the grandmother for adoption of J.B.H. The grandmother's attorney testified:

> When we received word that she would not be considered for placement for adoption, we immediately filed our motion to be considered for placement in hopes that the court would hear evidence and allow my client to be considered for placement of adoption. . . . We just contest that my client should have been allowed to have her case heard by the court rather than simply in a status hearing with DHS who flat out told her they would not consider her because of her past, . . . because there was a founded abuse.

an order that concluded the grandmother had failed to demonstrate fraud, irregularity, or casualty or misfortune preventing her from defending her rights and consequently, she had not established any grounds to vacate the adoption decree. Nevertheless, the court continued to the merits of the grandmother's petition regarding the merits of the adoption decree and concluded the best interest of J.B.H. supported adoption by the adoptive parents. The grandmother appeals.

On appeal, the grandmother claims the district court erred in failing to vacate the adoption decree on both of her asserted grounds. Specifically, the grandmother claims the decree should have been vacated based on irregularity or fraud under Iowa Rule of Civil Procedure 1.1012(2) or based on "[u]navoidable casualty or misfortune preventing the party from prosecuting or defending" under rule 1.1012(5). The adoptive parents defend the district court's ruling, asserting the grandmother lacks standing to challenge the adoption decree and, alternatively, claim she failed to prove either ground for vacating the decree.

## II. Standard of Review

We review a district court's decision on a petition to vacate a judgment for an abuse of discretion. *In re Adoption of B.J.H.*, 564 N.W.2d 387, 391 (Iowa 1997). In doing so, we are bound by the court's findings of fact, if those findings are supported by substantial evidence. *Id.*

### III.  Standing

The adoptive parents assert the grandmother lacks standing to challenge the adoption decree because she was not a party to the adoption action and was not entitled to notice of the action.[3]

In order to have standing, a "party must (1) have a specific personal or legal interest in the litigation and (2) be injuriously affected."  *Citizens for Responsible Choices v. Shenandoah*, 686 N.W.2d 470, 475 (Iowa 2004).  These are separate requirements, and a party must satisfy both in order to have standing.  *Id.*

The only protectable legal interest the grandmother claims to challenge from the adoption decree is her request to be considered as an option to adopt J.B.H.  That claim is insufficient to grant her standing in this matter.  While the grandmother was allowed to intervene in J.B.H.'s child-in-need-of-assistance and termination-of-parental-rights actions, her rights were limited to the matters before the juvenile court.  Once the parental rights of J.B.H.'s biological parents were terminated, the juvenile court ordered the DHS to be the legal guardian and custodian charged with finding a permanent placement for J.B.H.  *See* Iowa Code § 232.117(3)(a) (authorizing the transfer of legal custody and guardianship to the DHS following the termination of parental rights).

---

[3] While the district court did not address the adoptive parents' claim the grandmother lacked standing, the adoptive parents did raise the issue in their trial brief.  As the prevailing party in district court, the adoptive parents had no obligation to raise the issue in a 1.904(2) motion.  *See Meier v. Senecaut*, 641 N.W.2d 532, 540 n.1 (Iowa 2002) ("A prevailing party may support the district court judgment on any ground contained in the record, provided that the affirmance on that ground does not alter the rights of the parties established in the judgment.").

Following termination and the appointment of the DHS as guardian and custodian, the DHS was the only party in this matter required to consent to an adoption. *See* Iowa Code § 600.7(1) (2014). When the DHS is chosen to provide adoptive services, it is vested, by statute, with the authority to adopt rules that govern the selection process and criteria, with the overriding goal of "placing a child in a stable home environment as expeditiously as possible." Iowa Code § 600.7A. In this case, the DHS considered the adoptive parents, the grandmother, and the grandmother's sister as potential options to adopt J.B.H. While the grandmother was considered as an adoptive placement and had the benefit of a familial relationship, she did not have a legal right to be chosen. *See* Iowa Admin. Code r. 441-200.4(3) (outlining the selection criteria for choosing an adoptive family). Ultimately, the DHS rejected the grandmother based on concerns about her husband's past history with the DHS, namely, a founded child abuse report. *See* Iowa Admin. Code r. 441-200.11(1) ("A founded child abuse report shall mean denial of approval unless an evaluation determines than it does not merit denial."). If the grandmother wished to challenge the DHS's handling of the adoptive family selection process, her remedy was to pursue an administrative review. *See* Iowa Admin. Code r. 441-200.16 (providing that "[p]rospective adoptive families may appeal denial of approval of their home study"); *see, e.g.*, *Burkhart v. Iowa Dep't of Human Servs.*, No. 13-1979, 2014 WL 4231048, at *5 (Iowa Ct. App. Aug. 27, 2014) (adjudicating an appeal from an administrative review of the DHS's denial of an adoption).

Once the adoptive parents were selected and fulfilled the requirements of chapter 600, they were free to file the petition for adoption in district court. The

grandmother was not a party to that proceeding and was not entitled to notice of the proceeding. Thus, she had no legal right to challenge the outcome of that proceeding. *See* Iowa Code § 600.11 (listing the parties entitled to notice of an adoption hearing). Because the grandmother had no specific personal or legal interest in the adoption proceedings, we conclude she lacked standing to challenge the adoption decree. *See Citizens for Responsible Choices*, 686 N.W.2d at 475.

## IV. Conclusion

Because we conclude the grandmother lacked standing to challenge the adoption decree, we affirm the district court's denial of her petition to vacate.

**AFFIRMED.**