# IN THE COURT OF APPEALS OF IOWA

No. 19-0033
Filed August 5, 2020

IN RE THE MARRIAGE OF JUNE H. FITZPATRICK
AND THOMAS LUKE FITZPATRICK

Upon the Petition of
**JUNE H. FITZPATRICK,**
       Petitioner-Appellant,

**And Concerning**
**THOMAS LUKE FITZPATRICK,**
       Respondent,

**HOLLY RIHA, Executor of the Estate of Thomas Luke Fitzpatrick,**
       Appellee.
_____

Appeal from the Iowa District Court for Scott County, Brad McCall, Judge.

The petitioner appeals the district court decision denying her request to declare the parties' dissolution decree void. **AFFIRMED.**

William W. Graham of Duncan, Green, P.C., Des Moines, for appellant.

Deborah Tharnish and Holly M. Logan of Davis Brown Law Firm, Des Moines, for appellee.

Considered by Bower, C.J., and Doyle and Schumacher, JJ. Tabor, J., takes no part.

**SCHUMACHER, Judge.**

June Fitzpatrick appeals the district court decision denying her request to declare the parties' dissolution decree void. June's petition to vacate the decree was filed more than three years after the entry of the original dissolution decree. June did not present credible evidence of extrinsic fraud. Her claims of intrinsic fraud, alleging her former spouse made misrepresentations during the dissolution proceedings, are not sufficient grounds to declare the decree void. We affirm the decision of the district court.

## I.     Background Facts & Proceedings

June and Thomas Fitzpatrick were formerly married. On January 4, 2010, June filed a petition for dissolution of marriage.

June was born in Korea and came to the United States in 1975 or 1976. Prior to the dissolution trial, June requested the appointment of a translator. The court ruled it was June's responsibility to find a qualified interpreter and pay the costs. About one month before the scheduled dissolution hearing, June discharged her attorney and thereafter represented herself.[1]

At the beginning of the dissolution hearing, the court asked June about her request for a translator. She reiterated that she wanted a translator. The court stated June would have to hire an interpreter "because the State isn't going to pay for you to have a translator in a dissolution trial, only in a criminal trial." June said, "That's okay," and the hearing proceeded without the use of an interpreter. While

---

[1] This was June's second attorney in these dissolution proceedings. June filed two previous petitions for dissolution of marriage, which she dismissed, prior to the petition that led to the parties' divorce. She was represented by different attorneys in the prior proceedings.

she filed a motion to continue prior to the second day of trial, she orally withdrew the motion. June fully participated in the proceedings.

Thomas presented evidence to show that prior to the marriage he purchased 10,000 shares of stock in his father's business, Camera Corner, Inc., which represented half of the shares in the company. During the marriage, he purchased the remaining 10,000 shares. Thomas did not testify that he still owed a debt to his father. His financial affidavit did not list a debt to his father. June did not present any evidence on the issue. The dissolution decree states, "Exhibit A in Tom's testimony was that he still owes $220,900 for the remaining 10,000 shares." The court found the value of the company was $608,671.76 and deducted $220,900, resulting in a finding that the net value of the company was $387,771.76. The court found Thomas should be awarded the business.

Thomas claimed his mother loaned him $524,760 to purchase property in Hawaii. He testified that he had repaid her estate $51,472 and still owed the remaining amount. June disputed the existence of the debt. The district court stated, "[I]t would be grossly unfair to June, in particular in light of the slim evidence, that the entire $524,000 is a debt that Tom has to pay." The court concluded Thomas was responsible for the debt to his mother but did not determine the amount of the debt, stating, "Tom is in the best position to figure out the exact amount owed and structure repayment to his mother's estate." In light of the debt, Thomas was awarded more assets.

A dissolution decree for the parties was filed on February 21, 2012. Thomas was awarded marital assets worth $3,033,548, not taking into consideration his liabilities, and was also awarded his premarital assets. June was awarded marital

assets worth $775,839, plus alimony of $3000 per month for five years. June appealed the dissolution decree. She was represented by counsel for the appeal. Thomas hired appellate counsel distinct from his trial counsel.

On appeal, we found Thomas had been awarded net assets worth $2,527,075 and June had been awarded assets worth $842,239. *In re Marriage of Fitzpatrick*, No. 12-0472, 2012 WL 4100634, at *3 (Iowa Ct. App. Sept. 19, 2012). In our calculation, we found Thomas owed $220,900 to his father's estate and $473,000 to his mother's estate.[2] *Id.* at *3 n.3. We modified the dissolution decree to award June one-half of Thomas's retirement pension, which was worth $1,614,777, and to award Thomas one-half of June's pension, which was worth $108,839. *Id.* at *3. Thus, after the modification, Thomas received marital assets worth $1,774,107 and June received marital assets worth $1,595,208. We affirmed the dissolution decree in all other respects. *Id.* at *4.

Thomas died on June 12, 2013. His sister, Holly Riha, is the executor of his estate. A probate inventory for Thomas's estate was filed on March 10, 2014. June stated she did not see a copy of the probate inventory until November 2015. On December 29, 2015, June filed a petition seeking a determination that the dissolution decree was void based on fraudulent misrepresentations and fraudulent nondisclosure by Thomas during the dissolution proceedings. She claimed Thomas did not have any debts to his mother's or father's estates at the

---

[2] On appeal, June claimed there was not sufficient documentation to show Thomas owed his mother's estate more than $500,000. Thomas stated there was evidence to show he was required to pay his mother's estate $473,000. June did not dispute the court's finding that Thomas owed his father's estate $220,900. Thomas's appellate brief stated he "currently owes $220,900 for these shares."

time of the proceedings. June asserted Thomas's misrepresentations prevented a fair submission to the court of the issue of property division.

Riha, as the successor to Thomas in this action, filed a motion for summary judgment. She claimed (1) the action should be barred under Iowa Rule of Civil Procedure 1.1013(1) because it was filed more than one year after the dissolution decree; (2) June failed to exercise due diligence in the dissolution action; (3) June received the benefits of the decree and was estopped to void it; and (4) at most, the decree could be modified, not voided. June resisted the motion for summary judgment. The district court denied the motion for summary judgment, finding there were genuine issues of material fact on June's claims of fraud.

At the trial on June's petition to set aside the decree, beginning on October 29, 2018, she was assisted by a Korean-speaking interpreter. The estate stipulated that Thomas's debt of $220,900 to his father had been repaid prior to the dissolution proceedings. Benjamin Spadt, a CPA financial analyst, testified Thomas repaid $51,472 of the debt to his mother before the dissolution. After the dissolution, he repaid the remainder, $472,528, by a reduction in the amount he received from his mother's estate.

June testified Thomas told her he paid off her attorneys and she believed him. She also testified Thomas said he paid off the judge and "some of the judges are colluded politically," and she believed this as well. She stated she was not able to get all of the financial information she wanted to present at the dissolution hearing. June pointed out that she was not represented by an attorney and did not have an interpreter for those proceedings. June asserted that Thomas was not truthful about the value of assets during the dissolution proceedings.

The district court found Thomas did not make material misrepresentations about the loan from his mother noting he "continued to treat the money he received from his mother as a loan and in fact repaid the funds to his mother's estate, by declining distributions which would otherwise have gone to him."

The court found Thomas never represented that he owed $220,900 to his father's estate. The court also found, "there is good reason to believe June was well aware the debt to Tom's father's estate had been paid off prior to trial." The court stated:

> It is certainly true that both the trial court and the court of appeals were incorrect in their conclusion Tom owed his father's estate some $221,000 at the time of the divorce. This conclusion was not, however, due to any misrepresentations made by Tom or his attorneys during the trial. They simply got it wrong. There is absolutely no evidence to suggest this conclusion was due to any material misrepresentation by Tom made with the intent to defraud either June or the Court.

The district court concluded June failed to establish extrinsic fraud by Thomas.[3] The court denied June's petition to declare the parties' dissolution decree void. June appeals the district court's decision.

## II.    Standard of Review

This action was brought in equity and our review is de novo. Iowa R. App. P. 6.907. "In equity cases, especially when considering the credibility of witnesses, the court gives weight to the fact findings of the district court, but is not bound by them." Iowa R. App. P. 6.904(3)(g).

---

[3] The court found Thomas undervalued his interest in a family farm compared to an appraisal conducted shortly after his mother's death, but determined Thomas was competent to render his own opinion as to the market value of the farm. The interest in the farm was set aside to Thomas as premarital property.

### III.    Discussion

"A party may institute a suit in equity seeking to vacate a judgment and obtain a new trial where, with reasonable diligence, he or she was not able to discover the fraud or other grounds for vacating the judgment within one year after the judgment." *Johnson v. Mitchell*, 489 N.W.2d 411, 415 (Iowa Ct. App. 1992); *see also In re Marriage of Rhinehart*, No. 09-0193, 2010 WL 446560, at *2 (Iowa Ct. App. Feb. 10, 2010). In such an action, it is "essential that the fraud be extrinsic and collateral to the proceedings and issues in the original case." *Johnson*, 489 N.W.2d at 415. "A party attempting to vacate a judgment in an equity suit has a heavy burden." *Id.*

There are two types of fraud: intrinsic and extrinsic. *In re B.J.H.*, 564 N.W.2d 387, 391 (Iowa 1997). "Extrinsic fraud 'is some act or conduct of the prevailing party which has prevented a fair submission of the controversy.'" *Id.* (citation omitted). Extrinsic fraud "includes lulling a party into a false sense of security or preventing the party from making a defense." *Id.* (citation omitted). It "pertains to the manner in which the judgment was procured." *In re Marriage of Kinnard*, 512 N.W.2d 821, 823 (Iowa Ct. App. 1993).

On the other hand, intrinsic fraud does not constitute grounds to vacate a judgment. *Phipps v. Winneshiek Cty.*, 593 N.W.2d 143, 146 (Iowa 1999). "[I]ntrinsic fraud inheres in the issues submitted to the court." *Id.* "Intrinsic fraud 'occurs within the framework of the actual conduct of the trial and pertains to and affects the determination of the issue presented therein. It may be accomplished by perjury, or by the use of false or forged instruments, or by concealment or misrepresentation of evidence.'" *Mauer v. Rohde*, 257 N.W.2d 489, 496 (Iowa

1977) (citation omitted). "A claim of false testimony constitutes intrinsic fraud." *Phipps*, 593 N.W.2d at 146; *see also B.J.H.*, 564 N.W.2d at 391 ("[I]ntrinsic fraud inheres in the judgment itself; it includes, for example, false testimony and fraudulent exhibits."). In this case, the issues were fully submitted to the court concerning the debt owed to both of Thomas's parents and the issue concerning Thomas's share of the family farm. June had the opportunity to hire her own experts, conduct discovery, and complete cross-examination of Thomas and any witnesses. June testified during the current proceedings, held over six years after the entry of the original decree, she wanted to "do it all over again."

**A.** June made an allegation of extrinsic fraud by claiming Thomas told her that he paid off her attorneys and the judges associated with the dissolution proceedings. "Examples of extrinsic fraud are a bribed judge, dishonest attorney representing the defrauded client, or a false promise of compromise." *Mauer*, 257 N.W.2d at 496; *see also Ellett v. Ellett*, 542 S.E.2d 816, 818 (Va. Ct. App. 2001) ("Extrinsic fraud includes such circumstances as bribery of a judge or juror."). Bribery or corruption constitute extrinsic fraud because they prevent a fair submission of a controversy. *See Chewning v. Ford Motor Co.*, 550 S.E.2d 584, 587 (S.C. Ct. App. 2001).

June was required to establish a claim of extrinsic fraud by clear and convincing proof. *See Stearns v. Stearns*, 187 N.W.2d 733, 735 (Iowa 1971); *see also In re Marriage of Short*, 263 N.W.2d 720, 723 (Iowa 1978) (noting a party seeking to set aside a decree based on extrinsic fraud has the burden of proof). In the dissolution decree, the district court found June was not credible in testifying that she purchased property in Chicago with money given to her by relatives in

Korea. The court also noted her "extreme disorganization regarding her testimony and exhibits." In the more recent proceeding, the court noted June was "highly excitable" and "was easily distracted (by her own agenda) from the questions put to her." On issues concerning the credibility of witnesses, we give weight to the factual findings of the district court because the court was able to observe the witnesses. *In re Marriage of Murphy*, 592 N.W.2d 681, 683 (Iowa 1999). As the district court noted in the ruling on the petition to vacate, "June's character and credibility . . . were on full display."

We determine June's testimony that Thomas told her he paid off the attorneys and judges in the dissolution proceedings was not credible. Due to June's lack of credibility, she did not present clear and convincing proof to support her claim of extrinsic fraud.

**B.** June also claims there was extrinsic fraud because Thomas misrepresented the value of assets or did not include the value of some assets. Specifically, June alleges Thomas misrepresented the debt he owed to both his father's and mother's estates and that he undervalued his interest in a family farm. These are claims relating to intrinsic fraud, not extrinsic fraud. Allegations that a party gave false testimony is a claim of intrinsic fraud, which is not a basis to vacate a decree. *See Phipps*, 593 N.W.2d at 146. Likewise, claims that a party used false documents or misrepresented evidence are claims of intrinsic fraud. *Mauer*, 257 N.W.2d at 496. The trial court found the debt owed to Thomas's mother was paid to the estate after the dissolution and further that Thomas did not testify that he owed a debt to his father at the original trial. In addition, while the court found

that Thomas had undervalued his share in the family farm, as an owner, he was entitled to give his opinion as to the value.

June's assertions that Thomas engaged in fraud by misrepresenting that he owed money to his mother's and father's estates are claims of intrinsic fraud, as they are inherent to the issues presented to the court. *See Phipps*, 593 N.W.2d at 146. The parties' dissolution decree cannot be declared void due to intrinsic fraud. *See id.* ("Although extrinsic fraud can be a ground to vacate a judgment, intrinsic fraud cannot."). June argues this case is similar to *Rhinehart*, where our court affirmed the setting aside of a decree when a spouse failed to disclose assets. *See* 2010 WL 446560, at *3-4. June does not claim Thomas failed to disclose assets. She disagrees with the valuation of the assets and existence of debt from the original trial. She requests that she be granted a re-do of her original dissolution proceedings. We conclude that June's claims of misrepresentations by Thomas during the dissolution proceedings are not sufficient to cause the dissolution decree to be declared void.[4]

June failed to file an application to vacate the decree in one year. She has failed to establish that with reasonable diligence she would have been unable to assert grounds for vacating the judgment within one year after the judgment. We affirm the district court's decision finding June did not establish grounds to declare the parties' dissolution decree void.

**AFFIRMED.**

---

[4] Because we have determined the claims of misrepresentations by Thomas are claims of intrinsic fraud that are not sufficient to declare the dissolution decree void, we do not engage in an analysis of whether Thomas made misrepresentations, noting the district court found he had not made any material misrepresentations.